Thank you very much, Your Honor, and may it please the Court, my name is Michael Pollard, and along with my colleagues, James Baker and Olinger CDO, I represent the Trustees of the Local 38 Funding Pellets in this case. I'd like to reserve two minutes of time. Okay, so just voice the call again. Thank you, Your Honor. This case comes before the Court on a dismissal, basically on an issue raised, responded by the District Court, remanding this over a declaratory judgment action of the target tuition. There are three points that I would like to make in my opening argument that I think may help the Court perceive how the District Court heard in this matter. The first is that this was not a gateway matter. This was not a request for an arbitration intervention. We'll talk about that in a minute. Second, it has one of the problems that we get into is jurisdiction. What is the basis for our court's jurisdiction here, or for that matter, the District Court's jurisdiction? This is a ERISA case brought under Section 502A3. The plaintiffs in this case are the Trustees of Local 38. There's an issue in this case. Our money is received from employers who subscribe to the Local 38 Fund. But you only get into federal court if ERISA preempts this kind of a claim. Well, if you can state a cause of it, no, you can have federal question jurisdiction under Section 502A3, which is what happens. And really what this case was about was about adjudicating what would, in a civil case, be the preemption affirmative defense. But it was brought as a declaratory judgment action because the parties to this permissive arbitration agreement agreed that that's how it would be brought. That's how the arbitrator brought it. It is an ERISA claim because the plaintiffs are fund trustees. They receive money from Local 38 employers that originates from two different obligations. Number one, there is an obligation under the Pension Protection Act to pay funds to Local 38 to shore up the actuarial assets. I'm interested to know, basically, why the arbitrator didn't hit the whole thing here. I know you said there's a precondition. The arbitrator said that was satisfied. In any event, you went through with the arbitration. So on either basis, why do you have any grounds to complain about the arbitrator's role in this matter? First of all, with respect to the front ends, I will tell you that if the court looks at page 160 of the exertion order, that is the stipulations in order of the arbitrator, he finds in paragraphs 1 through 3 that a dispute exists and that he has been appointed to resolve that claim. Look at ER 135. He says that the preconditions are just on a different page. The preconditions are the meetings with the reciprocity coordinator, the efforts to mutual resolve, and those are the preconditions he's referring to. But if I may also just continue, that is with respect to the dispute referenced in paragraphs 1 through 4. Paragraph 5 on page 160 references another dispute, and that is the erisic dispute, and that is not he does not say he has been selected as the arbitrator for that. I just went forward with the arbitration as the whole matter. Did you not? We did. We had no choice because we were mandated to arbitration.  Well, it's not moot because what we wanted, and I want you to understand this for a second, Judge. This is not the only instance where this issue comes up. There are other funds. As a fiduciary of a plan, I can tell you I'm a fiduciary of my own firm's plan, and you're faced with this. What do you do with these Pension Protection Act payments that ERISA compels you not to use to pay current or future benefits? You're in a rock and a hard place if you follow an agreement and remit them. Your own participants can sue you. I'll note that that's all true, but the reality is the two unions here entered into an agreement, and the agreement contained an arbitration agreement that is an exceptionally broad arbitration agreement. You didn't have to do that, but you did. Actually, it's not an exceptionally broad. It's actually a, first of all, it's permissive. I agree with that. Well, let me try and dispel the view of that notion because it is not an exceptionally broad. The arbitration agreement does not say, any and all disputes arising in connection with this agreement. It says, any disputes arising from this agreement. It's actually much narrower than what I'm cited in the case accounts to describe. The magic word. Oh, arising from is very different than arising in connection with. And so, does a dispute about pension plan amendment provisions, which ERISA is very specific about, because it tries to help, tries to require, mandate these for underfunded plans, does it arise under the PPA, or does it arise under this agreement? I mean, it arises under the PPA, which is why the court found two separate disputes here. Does the agreement refer to the concepts that are covered by ERISA? Another great question. It does not because the reciprocal agreement was signed years before the Pension Protection Act was even passed. Reciprocal Act was signed in 1974. 1974, but the Pension Protection Act was passed, I forget the year, but it's after the reciprocity agreement in this case. So, no, the reciprocal agreement could not have contemplated the PPA agreements. And you don't view the PPA as an amendment to ERISA? It is, but it's an obligation to never exist at the time the reciprocal agreement was entered into. Okay, but I think as well as Charlie, with counseling, you seem to be saying that when the agreement says arising from the agreement is different from zero, any, you know, if it's in the agreement and it arises from the agreement, then I would think that a common sense rating would suggest that anything that's covered in the agreement would be included in the arbitration. Why is that wrong? Because I think, A, it arises from the PPA. P is any dispute, and the court here found two separate disputes. And three, what predicates arbitration versus court is agreement. And the stipulation and order found with respect to the second dispute agreements that we would file this case in federal court. And, in fact, the defendants didn't hit differently. They chose the vehicle of a motion for lack of subject matter jurisdiction to challenge whether there was a number of supply or not. The district court? No, the district court didn't say that. The district court said, I want supplemental briefing. The parties have five pages to discuss three issues. One of them is whether the FAA trumps this case and kicks it back to arbitration. The answer was, I'm sorry, I tried to answer it. If I could interject a quick question. Is there any place in the record where, on the arbitration, you said, we're doing this under protest, we don't accept jurisdiction? We arbitrated the case over objection, yes, Your Honor. And that's in the record in the other appeal that is part of this, which is not a 44-4 argument. That's the appeal from that arbitration court. I was hearing about it, but I didn't have a few guesses. Well, I'm sorry, Your Honor. We'll hear from the other side. The other trustees. Good morning, Your Honor. My name is Louis Malone, and I represent the trustees of the Partners in Welfare's National Pension Fund. To address the first question raised by this court, subject matter jurisdiction, there was no subject matter jurisdiction in front of the district court. This was a declaratory judgment action. And as the court is well aware, a declaratory judgment act does not confer jurisdiction. You have to have underlying federal jurisdiction. They selected Arisa Section 502A3 as their jurisdictional basis. Arisa Section 502A3 allows certain enumerated parties to bring an action for appropriate equitable relief. Not money damages. Appropriate equitable relief. And when you have a situation where you have a declaratory judgment action, to determine whether or not there is, in fact, subject matter jurisdiction, this court in the Jenkins case said you flip the parties around and you look to see whether or not the subject, the declaratory judgment defendant, in this case my client, could have, acting as a plaintiff, brought an action against the declaratory judgment plaintiff, in this case the local 38 trustees, for the relief that we were seeking. Could we sue under Arisa to collect our money damages? The answer is no. Arisa allows certain parties to do certain things. We are fiduciary, so therefore you have to look under Section 502A of Arisa to see what costs of action can Arisa fiduciary bring. It can bring, one, for a breach of fiduciary duty against another fiduciary. Two, it can bring an action for appropriate equitable relief under the catch-all provisions of 502A3. And this court, in the Weiss decision, made it quite clear that that does not include money damages. So let's talk about 502A2 very quickly. In 502A2, I'm allowed to sue another fiduciary of my plan if I think that fiduciary has breached its fiduciary duty to my participants and beneficiaries. For someone to be a fiduciary of my plan, they must have discretion over my plan assets. The local 38 trustees never had discretion over my plan assets because they never held my plan assets. The money that was owed my plan does not become my plan's asset until such time as it comes into my hands. This court ruled that in the Baas decision, where it clearly said that money out there, in the hands of somebody else, is not a plan asset. So the person who's dealing with that money is not a plan fiduciary. So that money that was owed us, those money damages that we were seeking, was never an asset of the Plumbers and Pipers National Pension Fund. Therefore, the local 38 trustees could not have been a fiduciary of the local 38 pension plan, of the Plumbers and Pipers National Pension Plan. Therefore, we could not have used 50282 in a coercive way to try and collect our money damages. The district court, Your Honor, ruled on the basis of the FAA. The district court determined, as we were having our oral argument in front of the court, it became crystal clear to the district court what exactly it was that it was being asked to do. It was being asked to interfere mid-arbitration. It was being asked to give an advisory opinion to the arbitrator as to what body of law had to be applied to resolve this underlying dispute over money damages. And the district court, as it heard what was being talked about, said, wait a minute, I can't do that. And this court, in the Sussex case, in the Arrowhead case, made it quite clear that district court intervention in arbitration can occur at one of two stages, absent extraordinary circumstances, and I might add, this court has never found extraordinary circumstances. You can do it at the beginning of the arbitration, when someone can come in and say, no, there's no effective arbitration agreement here, and or the issues that are to be arbitrated don't fall under that agreement. You can do it at the end, when the arbitration is complete, and I don't like the result, and I can come in here and try and ask the court to vacate the arbitration award, which is the other issue, which is in front of this court, which the court said they didn't want your argument on. And the court in Sussex refers to these as the bookends. It's an apt, descriptive beginning, and you can't do it in the middle. Well, the district court, from your perspective, never got to the point that you raised earlier, which is that you can't get money damages under 50283. That is correct, Your Honor. The district court never reached our argument as the subject matter jurisdiction, but Your Honor's can. At the district court, I gather, also, that the language of the agreement, that anything arising from the agreement was sufficiently broad to confer all of the legal questions, including the arresting question, upon the arbitrator. Absolutely, Your Honor. The district court determined that the arbitration, the resident-prostate agreement's arbitration provisions encompassed the entire dispute, and that included the decision of what law had to be applied. And the district court found that the arbitrator was empowered to make that decision and she sent it back. I suppose we disagree with you on that issue. What about mootness? Your Honor, this case is clearly moot. Mootness occurs when you can no longer get any release. So you have to ask yourselves, why is it that the Local 38 Fund wanted to have ERISA apply to this case? And they told us three reasons. One, they wanted to apply a statute of limitations, even though the arrest-prostate agreement contains no statute of limitations. Two, they wanted to argue that my client had unclean hands, and therefore that should somehow preclude our claim. And three, this whole discussion about the PPA, which Mr. Pollard talked about, which is not before this Court in this issue, in this case, other than in the mootness question, is before the Court on the other case that you are looking at in terms of confirming the arbitration award. Turning back to the first point, limitations. The arbitrator said, even if there is a statute of limitations here, I find that it was equitably told. They're both limitations. With regard to unclean hands, he says, no. If you say they have unclean hands, I say you have unclean hands. You both have unclean hands. Neither of you can rely on that defense. That one's gone. And then we have this whole PPA business. Well, their issue with the PPA is that the arbitrator got it wrong. They don't like his conclusion. He looked at the various cases that were out there on this issue. He heard my argument. He heard their argument. And he accepted my position. Their concern is not over application. Their concern is result. They don't like the result. This is the manifest disregard of the law claim. Is that what you're talking about? Yes, Your Honor. I believe that's what this is. And we've briefed that issue on why there isn't a manifest disregard of the law because there's no established law. And you've got to have established law to have a manifest disregard of the law. But their concern is, again, with the result, not the process. They disagree with the arbitrator's determination about the limitations period. They say that the arbitrator got it wrong when he said that there was equitable tolling. Whether the arbitrator got it right or wrong is not an issue, for it is not a basis to vacate the arbitration award. They say he got it wrong on unclean hands. Again, whether he got it right or wrong is not a basis to set aside the arbitration award. When that arbitrator ruled in the comprehensive manner in which he did, in which he took every issue that they put before him, whether they did it under protest or not, they put every issue in front of him, and he adjudicated every issue, this became moot. This part of this process became moot because if you reverse and it goes back to the district court, what can the district court do? What would the arbitrator do? The same thing, the arbitrators won't be done. And for that reason, I hope I've addressed your questions here. My time is rapidly running out. The district court got it right. This court should not reverse this. We should move on. Thank you. Your time has expired. Thank you very much. Mr. Palmer, you have some reserve time. Thank you, Judge Oskin, on a response to your question about mootness. Mootness occurs when you're deprived of the fruits of your appeal. We've been deprived of the fruits of our appeal because what the parties agreed to was a federal court applying to no vote review to the arisa preemption question. All we hear now, all that's left is you'd get a manifest disregard, which is not a no vote review. It's kind of a deferential. We wanted a district court to address the arisa preemption issue on the merits of the first instance. So what does the district court do at this point? Well, you can refer to the district court to decide the subject matter jurisdiction issue. I think, well, okay, then what? And over in case 16, I guess you'd vacate that because the court is doing a search jurisdiction here. And so this becomes the preemption issue. Ruling the court decides it. And, by the way, both parties have interest in these initiatives. Their plan has us off funds. We hold them for 45 days. If we remit too many, our people sue us. If we remit too few, they sue us. We can recoup them from that on a 502A3 action. There is a risk to jurisdiction here. And this is a vehicle that where there are two funds with an interest in this money, which both of these funds have, this is a perfectly appropriate or risk vehicle to submit. Unless the court has any other questions, I'll conclude there. Thank you very much, counsel. Thank you. The case just argued will be submitted for decision.
judges: O'scannlain, Gould, M. Smith